**David BURROW, et al., Petitioners,**

v.

**Carol ARCE, et al., Respondents.**

**No. 98–0184.**

Supreme Court of Texas.

Argued Nov. 18, 1998.

Decided July 1, 1999.

Kenneth Tekell, David M. Gunn, Houston, for Petitioners.

Mike A. Hatchell, Tyler, William V. Dorsaneo, III, Dallas, William J. Skepnek, Lawrence, KS, Molly H. Hatchell, Tyler, Steven M. Smoot, Austin, for Respondents.

Justice HECHT delivered the opinion of the Court.

The principal question in this case is whether an attorney who breaches his fiduciary duty to his client may be required to forfeit all or part of his fee, irrespective of whether the breach caused the client actual damages. Like the court of appeals,[1] we answer in the affirmative and conclude that the amount of the fee to be forfeited is a question for the court, not a jury. We reverse the court of appeals' judgment only insofar as it affirms defendants' summary judgment based on affidavits we find to be conclusory.

## I

Explosions at a Phillips 66 chemical plant in 1989 killed twenty-three workers and injured hundreds of others, spawning a number of wrongful death and personal injury lawsuits. One suit on behalf of some 126 plaintiffs was filed by five attorneys, David Burrow, Walter Umphrey, John E. Williams, Jr., F. Kenneth Bailey, Jr., and Wayne Reaud, and their law firm, Umphrey, Burrow, Reaud, Williams & Bailey. The case settled for something close to $190 million, out of which the attorneys received a contingent fee of more than $60 million.

Forty-nine of these plaintiffs then filed this suit against their attorneys in the Phillips accident case alleging professional misconduct and demanding forfeiture of all fees the attorneys received. More specifically, plaintiffs alleged that the attorneys, in violation of rules governing their professional conduct, solicited business through a lay intermediary,[2] failed to fully investigate and assess individual claims,[3] failed to communicate offers received and demands made,[4] entered into an aggregate settlement with Phillips of all plaintiffs' claims without plaintiffs' authority or approval,[5] agreed to limit their law practice by not representing others involved in the same incident,[6] and intimidated and coerced their clients into accepting the settlement.[7] Plaintiffs asserted causes of action for breach of fiduciary duty, fraud, violations of the Deceptive Trade Practices—Consumer Protection Act,[8] negligence, and breach of contract. The attorneys have denied any misconduct and plaintiffs' claim for fee forfeiture.

The parties paint strikingly different pictures of the events leading to this suit:

- The plaintiffs contend: In the Phillips accident suit, the defendant attorneys signed up plaintiffs en masse to contingent fee contracts, often contacting plaintiffs through a union steward. In many instances the contingent fee

---

1. 958 S.W.2d 239.

2. See TEX. DISCIPLINARY R. PROF'L CONDUCT 7.03(b), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (1998) (TEX. STATE BAR R. art. X, § 9).

3. See id. Rules 1.01, 2.01.

4. See id. Rule 1.03.

5. See id. Rule 1.08(f).

6. See id. Rule 5.06(b).

7. See id. Rules 1.02, 2.01.

8. TEX. BUS. & COM.CODE §§ 17.41–.63.

percentage in the contract was left blank and 33–1/3% was later inserted despite oral promises that a fee of only 25% would be charged. The attorneys settled all the claims in the aggregate and allocated dollar figures to the plaintiffs without regard to individual conditions and damages. No plaintiff was allowed to meet with an attorney for more than about twenty minutes, and any plaintiff who expressed reservations about the settlement was threatened by the attorney with being afforded no recovery at all.

- The defendant attorneys contend: No aggregate settlement or any other alleged wrongdoing occurred, but regardless of whether it did or not, all their clients in the Phillips accident suit received a fair settlement for their injuries, but some were disgruntled by rumors of settlements paid co-workers represented by different attorneys in other suits. After the litigation was concluded, a Kansas lawyer invited the attorneys' former clients to a meeting, where he offered to represent them in a suit against the attorneys for a fee per claim of $2,000 and one-third of any recovery. Enticed by the prospect of further recovery with minimal risk, plaintiffs agreed to join this suit, the purpose of which is merely to extort more money from their former attorneys.

These factual disputes were not resolved in the district court. Instead, the court granted summary judgment for the defendant attorneys on the grounds that the settlement of plaintiffs' claims in the Phillips accident suit was fair and reasonable, plaintiffs had therefore suffered no actual damages as a result of any misconduct by the attorneys, and absent actual damages plaintiffs were not entitled to a forfeiture of any of the attorneys' fees. In disposing of all plaintiffs' claims on these grounds,

the court specifically noted that factual disputes over whether the attorneys had engaged in any misconduct remained unresolved.

Before summary judgment was granted and less than two weeks before trial was set, plaintiffs amended their pleadings and named four additional plaintiffs. Defendants objected to the addition of these plaintiffs "due to the lack of service of citation and untimeliness of their appearance". In its summary judgment, the district court granted defendants' objection and struck the additional plaintiffs as parties.

All but one of the plaintiffs (Austin Gill, pro se) appealed. The court of appeals agreed with the district court that defendants had established that plaintiffs had suffered no actual damages caused by any misconduct, and thus it affirmed the summary judgment on all plaintiffs' claims except breach of fiduciary duty.[9] The court disagreed, however, that actual damages are a prerequisite for fee forfeiture.[10] Observing that Texas law has long recognized fee forfeiture as a remedy for an agent's breach of fiduciary duty to his principal with or without actual damages, the court discerned "no reason to carve out an exception for breaches of fiduciary duty in the attorney-client relationship."[11] However, the court refused to hold that fee forfeiture was either automatic or total for an attorney's breach of fiduciary duty to his client;[12] rather, the court concluded that whether a fee should be forfeited, and how much of it, depends on the following factors:

(1) the nature of the wrong committed by the attorney or law firm; (2) the character of the attorney's or firm's conduct; (3) the degree of the attorney's or firm's culpability, that is, whether the attorney committed the breach inten-

9. 958 S.W.2d at 251–256.

10. *Id.* at 244–249.

11. *Id.* at 246.

12. *Id.* at 249–250.

tionally, willfully, recklessly, maliciously, or with gross negligence; (4) the situation and sensibilities of all parties, including any threatened or actual harm to the client; (5) the extent to which the attorney's or firm's conduct offends a public sense of justice and propriety; and (6) the adequacy of other available remedies.[13]

The appeals court concluded that while the parties were entitled to have a jury determine whether the defendant attorneys breached their fiduciary duties, the court was required to determine the amount of any fee forfeiture because forfeiture is an equitable remedy.[14] Accordingly, the court of appeals reversed the summary judgment and remanded the case for a determination of whether the defendants breached their fiduciary duty to their former clients, and if so, what amount, if any, of their fee should be forfeited to plaintiffs.[15] The court also held that the four plaintiffs added by the amended pleadings should not have been struck.[16]

Shortly before the court of appeals' opinion issued, plaintiffs settled with three of the defendants, Walter Umphrey, John E. Williams, and Wayne Reaud. The three remaining defendants, David Burrow, F. Kenneth Bailey, Jr., and the law firm of Umphrey, Burrow, Reaud, Williams & Bailey, petitioned this Court for review. Plaintiffs (including Gill) also petitioned this Court for review.[17] We

refer collectively to the petitioner-plaintiffs as "the Clients", and to the petitioner-defendants as "the Attorneys".

The Clients contend that the Attorneys' serious breaches of fiduciary duty require full forfeiture of all their fees, irrespective of whether the breaches caused actual damages, but if not, that a determination of the amount of any lesser forfeiture should be made by a jury rather than the court. The Clients also contend that their lack of actual damages has not been established as a matter of law. The Attorneys argue that no fee forfeiture can be ordered absent proof that the Clients sustained actual damages, but even if it could, no forfeiture should be ordered for the misconduct the Clients allege.

We granted both petitions.[18]

## II

At the outset we consider whether the Attorneys have established as a matter of law that the Clients have suffered no actual damages as a result of any misconduct by the Attorneys. The lower courts concluded that Robert Malinak's affidavit offered by the Attorneys in support of their motion for summary judgment established that they caused the Clients no actual damages. The Clients argue that Malinak's affidavit is too conclusory to support summary judgment.

13. *Id.* at 250.

14. *Id.* at 251.

15. *Id.* at 251, 258.

16. *Id.* at 258.

17. The petitioner-plaintiffs are: Carol Arce, individually and as next friend of Lyndsey Arce and Lauren Arce; Raul S. Alvarado; David H. Anderson, Jr.; Freddie Barfield; Dorothy Barfield; Mercer Black; Richard W. Bradley, Jr.; James Karl Bryant; Sandra Bryant; Stephen Lloyd Bryant; Thomas G. Butcher; Julane Campbell, individually and as next friend of Jason Campbell, Justin Campbell, and Jaret Campbell; Dennis Mike

Curry; Ricky L. Dannelley; Glenn E. Deshotel; John L. Dixon; Silverrol Ferguson; Julian Garcia, Jr.; Austin Gill; Robert F. Gudz; Joe Alan Holzworth; Wesley S. Hood; Bobby Ray Jones; James M. Kerr; Stanley P. Korenek; James L. Lauderdale; Jesse H. Luna; Ronald D. Lyon; Walter E. Marbury, Jr.; John Martinez; Patrick McCourtney; Gary McPherson; Lisa McPherson; Carol D. Montelongo; Pete Montoya III; Herbert Mosley; Terry L. Mullins; Adolfo Ochoa, Jr.; Philip Owens; Jesus R. Pena; Carl T. Richardson; Glenn W. Robbins; Johnnie Rogers; Stephen R. Ross; Amanda Ann Seaman; Terry Wayne Simpson; Allen Smith, Jr.; Helga Sieglinde Thompson; Robert A. Wash; and Calvin L. Williams.

18. 41 Tex. Sup.Ct. J. 1318 (Aug. 25, 1998).

■ An expert's opinion testimony can defeat a claim as a matter of law, even if the expert is an interested witness, such as the defendant.[19] But it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.[20] Thus, as we held in *Anderson v. Snider*, "conclusory statements made by an expert witness are insufficient to support summary judgment."[21] In that case, an attorney sued for malpractice moved for summary judgment supported by his own affidavit, which stated in substance:

> I have reviewed the Plaintiff's Original Petition, my file and the relevant and material documents filed with the Court, and it is clear that I acted properly and in the best interest of [my client] when I represented her, and that I have not violated the [DTPA]. I did not breach my contract with [my client], and have not been guilty of any negligence or malpractice. [My client] has suffered no damages or legal injury as a result of my representation of her.[22]

We held that this affidavit, which gave no basis for its conclusions, was nothing more than a sworn denial of plaintiff's claims and could not support summary judgment.[23]

■ Here, Malinak's affidavit states that his opinions are based on the pleadings and evidence in the case and his experience and training as a personal injury trial lawyer. The affidavit then avers in substance:

> It is important as an attorney in evaluating cases for settlement to consider the underlying liability facts involved,

and in this instance the underlying facts with reference to the Phillips explosion of 1989. In my opinion it is critical to the settlement evaluation of the cases arising out of that explosion to consider the identity of the employer of the plaintiffs and/or decedents at the time of the explosion. Moreover, I believe that it is important to consider the elements of damages available to each Plaintiff, whether it be an injury case, or a death case, and to consider the losses that occurred to each Plaintiff as a result of the explosion. I have considered the underlying liability facts, the employment status of the Plaintiffs and/or decedents, and have considered the elements of and damage facts on each Plaintiff to render my opinions expressed in this Affidavit.

> The Plaintiffs were caused no damages by reason of any and/or all of the allegations made by them against the Defendants. Each and all of the Plaintiffs were reasonably and fairly compensated by way of settlement for those elements of damages that were available to them as Plaintiffs in the cases against Phillips, taking into account the employment, liability, and injury facts involved. I have not addressed issues concerning the allegations of malpractice, wrongdoings, or omissions which allegedly resulted in damages to Plaintiffs. Irrespective of the validity of those allegations, it is my opinion that the Plaintiffs have not been damaged as a result of any of these allegations, whether groundless or valid.

These assertions are as deficient as those in the *Anderson* affidavit. The affidavit says no more than that Malinak, an experienced attorney, has considered the rele-

---

**19.** *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991) (per curiam).

**20.** *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726–727 (Tex.1998) (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711–712 (Tex.1997); *Schaefer v. Texas*

*Employers' Ins. Ass'n*, 612 S.W.2d 199, 202–204 (Tex.1980).

**21.** 808 S.W.2d at 55.

**22.** *Id.* at 54 (second alteration in original).

**23.** *Id.* at 55.

vant facts and concluded that the Clients' settlements were all fair and reasonable. Malinak's training and experience qualify him to offer opinions on the fairness of the Clients' settlements, but he cannot simply say, "Take my word for it, I know: the settlements were fair and reasonable." Credentials qualify a person to offer opinions, but they do not supply the basis for those opinions. The opinions must have a reasoned basis which the expert, because of his "knowledge, skill, experience, training, or education",[24] is qualified to state. That basis is missing in Malinak's affidavit. He does not explain why the settlements were fair and reasonable for each of the Clients. His affidavit, like the affidavit in *Anderson,* is nothing more than a sworn denial of plaintiffs' claims and no more entitles the Attorneys to summary judgment than a lawyer's equally conclusory affidavit stating that the Clients had suffered $10 million damages would entitle them to summary judgment.

In reaching the contrary conclusion, the court of appeals reasoned:

> Malinack [sic] could have addressed the issues by listing each plaintiff separately, with the relevant data concerning them. Although that may have been clearer and more direct, we are of the opinion it is not required. As written, the affidavit gave appellants enough information, by referring to the specific items relied on, to enable them to controvert it.[25]

The issue, however, is not whether Malinak's affidavit was controvertible; it clearly was. The Clients could simply have filed an affidavit by an attorney who had reviewed all the relevant facts and concluded that the settlements were not fair and reasonable. There is no suggestion that such testimony was unavailable to the Clients or even hard to come by. Instead, the issue is whether Malinak's affidavit states a sufficient basis for his opinions. Malinak might have analyzed the Clients'

injuries by type, or related settlement amounts to medical reports and expenses, or compared these settlements to those of similar claims, or provided other information showing a relationship between the plaintiffs' circumstances and the amounts received. He did not do so. The absence of such information did not merely make the affidavit unclear or indirect; it deprived Malinak's opinions of any demonstrable basis. We therefore conclude that summary judgment could not rest on Malinak's affidavit.

The Attorneys argue that even if Malinak's affidavit cannot establish that the Clients suffered no actual damages, the affidavits of attorney Burrow, a defendant, and attorney Allison, can. After stating that it was his goal "to see that each of these clients were reasonably compensated for their losses sustained as a result of the Phillips explosion", Burrow, a very experienced attorney, stated:

> To that end I developed the liability facts through on site inspection, discovery, and depositions. I considered the liability facts, the appropriate elements of damages for my clients, individually evaluated their cases, and I and my partners participated in the individual settlement of our individual client cases. It is my opinion that my goal was accomplished for all of the Plaintiffs now suing me.

Attorney Allison, another highly qualified attorney, stated that he was "familiar with the processes of evaluating, trying, and settling personal injury and death cases on both sides of the docket", and that "[t]he personal injury elements of recovery and 'wrongful death' case elements of recovery were individually considered toward the goal of arriving at individually evaluated settlements that would fairly and reasonably compensate each Plaintiff, such goal being accomplished in each case." Neither Burrow's nor Allison's affidavit is as detailed as Malinak's. Like Malinak, Burrow

---

**24.** Tex.R. Evid. 702.

**25.** 958 S.W.2d at 253.

and Allison have substantial credentials to render expert opinions on issues of attorney practice, but their affidavits, like Malinak's, offer no basis for the opinions stated. Together, these two affidavits add nothing to the Attorneys' summary judgment evidence.

Accordingly, we conclude that the Attorneys failed to establish as a matter of law that the Clients did not suffer actual damages, and thus the Attorneys were not entitled to summary judgment dismissing the Clients' claims on that basis.

### III

The Attorneys nevertheless argue that the Clients have not alleged grounds that would entitle them to forfeiture of any of the Attorneys' fees. Alternatively, the Attorneys contend that at most a portion of their fees is subject to forfeiture, and that that portion should be determined by the court rather than by a jury. The Clients counter that whether they sustained actual damages or not, the Attorneys, for breach of their fiduciary duty, should be required to forfeit all fees received, or alternatively, a portion of those fees as may be determined by a jury. These arguments thus raise four issues: (a) are actual damages a prerequisite to fee forfeiture? (b) is fee forfeiture automatic and entire for all misconduct? (c) if not, is the amount of fee forfeiture a question of fact for a jury or one of law for the court? and (d) would the Clients' allegations, if true, entitle them to forfeiture of any or all of the Attorneys' fees? We address each issue in turn.

### A

To determine whether actual damages are a prerequisite to forfeiture of an attorney's fee, we look to the jurisprudential underpinnings of the equitable remedy of forfeiture. The parties agree that as a rule a person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust. Section 243 of the *Restatement (Second) of Trusts* states the rule for trustees: "If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation." [26] Similarly, section 469 of the *Restatement (Second) of Agency* provides:

> An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned. [27]

Citing these two sections, section 49 of the proposed *Restatement (Third) of The Law Governing Lawyers* applies the same rule to lawyers, who stand in a relation of trust and agency toward their clients. Section 49 states in part: "A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter." [28]

Though the historical origins of the remedy of forfeiture of an agent's compensation are obscure, the reasons for the remedy are apparent. The rule is founded both on principle and pragmatics. In principle, a person who agrees to perform compensable services in a relationship of trust and violates that relationship breaches the agreement, express or implied, on which the right to compensation is based. The person is not entitled to be paid when he has not provided the loyalty bargained for

---

**26.** RESTATEMENT (SECOND) OF TRUSTS § 243 (1959).

**27.** RESTATEMENT (SECOND) OF AGENCY § 469 (1958); *see also id.* § 399(k) (one remedy for a principal whose agent violates a fiduciary duty is the refusal to pay compensation).

**28.** RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 (Proposed Final Draft No. 1, 1996).

and promised. Thus, for example, comment a to section 243 of the *Restatement (Second) of Trusts* explains:

> When the compensation of the trustee is reduced or denied, the reduction or denial is not in the nature of an additional penalty for the breach of trust but is based upon the fact that the trustee has not rendered or has not properly rendered the services for which compensation is given.[29]

Along the same lines, comment b to section 49 of the proposed *Restatement (Third) of The Law Governing Lawyers* explains: "The remedy of fee forfeiture presupposes that a lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client-lawyer relationship and thereby the justification of the lawyer's claim to compensation."[30] Pragmatically, the possibility of forfeiture of compensation discourages an agent from taking personal advantage of his position of trust in every situation no matter the circumstances, whether the principal may be injured or not. The remedy of forfeiture removes any incentive for an agent to stray from his duty of loyalty based on the possibility that the principal will be unharmed or may have difficulty proving the existence or amount of damages. In other words, as comment b to section 49 of the proposed *Restatement (Third) of The Law Governing Lawyers* states, "[f]orfeiture is also a deterrent."[31]

■ To limit forfeiture of compensation to instances in which the principal sustains actual damages would conflict with both justifications for the rule. It is the agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation. An agent's compensation is not only for specific results but also for loyalty. Removing the disincentive of forfeiture except when

harm results would prompt an agent to attempt to calculate whether particular conduct, though disloyal to the principal, might nevertheless be harmless to the principal and profitable to the agent. The main purpose of forfeiture is not to compensate an injured principal, even though it may have that effect. Rather, the central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging agents' disloyalty.

In the one case in which we have considered the subject, *Kinzbach Tool Co. v. Corbett–Wallace Corp.*,[32] this Court held that an agent was required to forfeit a secret commission received from a conflicting interest even though the principal was unharmed. There, an oil field tool company, Corbett–Wallace, wanted to sell its sales rights contract on a patented tool, the whipstock, to another company, Kinzbach Tool, and was willing to go as low as $20,000 on the price. Corbett–Wallace contacted a Kinzbach Tool employee, Turner, and offered him a secret commission if he could get Kinzbach Tool to buy the whipstock contract. Corbett–Wallace instructed Turner not to disclose its bottom-line price to his employer but to get as large an offer as possible. Turner approached his superiors about buying the contract without disclosing his conversations with Corbett–Wallace or the price it was willing to take. Turner's superiors told him that Kinzbach Tool would pay as much as $25,000 for the contract and asked him to find out what price Corbett–Wallace would take. Turner did not tell his employer that Corbett–Wallace was willing to accept $5,000 less than Kinbach Tool was willing to offer. Kinzbach Tool bought the whipstock contract for $25,000, payable in installments, and Corbett–Wallace agreed to pay Turner a $5,000 commission. When Kinzbach Tool learned of

---

**29.** RESTATEMENT (SECOND) OF TRUSTS § 243 cmt. a (1959).

**30.** RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. b (Proposed Final Draft No. 1, 1996).

**31.** *Id.*

**32.** 138 Tex. 565, 160 S.W.2d 509 (1942).

Turner's secret commission arrangement, it sued Corbett–Wallace and Turner, claiming that the secret commission should be credited to the sale price. We agreed, holding that Turner had breached his fiduciary duty to his employer.[33] Rejecting Corbett–Wallace's argument that the commission should not be forfeited because Kinzbach Tool paid no more for the whipstock contract than it was worth, we explained:

> It is beside the point for either Turner or Corbett to say that Kinzbach suffered no damages because it received full value for what it has paid and agreed to pay. A fiduciary cannot say to the one to whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired. It is the law that in such instances if the fiduciary "takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received." [34]

Texas courts of appeals,[35] as well as courts in other jurisdictions [36] and respected commentators,[37] have also held that forfeiture

---

33. *Id.* at 513.

34. *Id.* at 514 (quoting *United States v. Carter*, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910)).

35. *See, e.g., Watson v. Limited Partners of WCKT, Ltd.*, 570 S.W.2d 179, 182 (Tex.Civ. App.—Austin, 1978, writ ref'd n.r.e.) (holding that limited partners may recover against general partner without a showing of actual damages); *Russell v. Truitt*, 554 S.W.2d 948, 952 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.) (holding that plaintiffs were entitled to recovery of agency fees as a matter of law if the breach of fiduciary duty was proved without regard as to whether the breach caused any harm); *Anderson v. Griffith*, 501 S.W.2d 695, 701 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e) (explaining that, even though the principal was not injured, " '[t]he self-interest of the agent is considered a vice which renders the transaction voidable at the election of the principal without looking into the matter further than to ascertain that the interest of the agent exists' ") (quoting *Burleson v. Earnest*, 153 S.W.2d 869, 874 (Tex.Civ. App.—Amarillo 1941, writ ref'd w.o.m.)); *see also Judwin Properties, Inc. v. Griggs & Harrison, P.C.*, 911 S.W.2d 498, 507 (Tex.App.—Houston [1st Dist.] 1995, no writ) (stating in dicta that "[w]hen an attorney has stolen or used the interest to the detriment of his client, the plaintiff need not prove causation for breach of fiduciary duty"); *Bryant v. Lewis*, 27 S.W.2d 604, 608 (Tex.Civ.App.—Austin 1930, writ dism'd ) (holding that attorney who represented clients with conflicting interests was not entitled to any compensation for legal services rendered without addressing whether actual damages were sustained).

36. *See, e.g., Hendry v. Pelland*, 73 F.3d 397, 402 (D.C.Cir.1996) ("[C]lients suing their attorney for breach of the fiduciary duty of loyalty and seeking disgorgement of legal fees as their sole remedy need prove only that their attorney breached that duty, not that the breach caused them injury."); *In re Estate of Corriea*, 719 A.2d 1234, 1241 (D.C.1998) (holding that the plaintiff's inability to quantify the damages suffered did "not disqualify the profits ordered disgorged as 'just compensation for the wrong' ") (quoting *Sheldon v. Metro–Goldwyn Pictures Corp.*, 309 U.S. 390, 399, 60 S.Ct. 681, 84 L.Ed. 825 (1940)); *Eriks v. Denver*, 118 Wash.2d 451, 824 P.2d 1207, 1213 (1992) (en banc) (rejecting the argument that a finding of damages and causation is required to order fee forfeiture); *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn.1982) (holding that the client need not prove actual harm to obtain fee forfeiture); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So.2d 947, 952 (Fla.Dist.Ct.App.1993) (holding that "fee forfeiture should be considered only when an ordinary remedy like offsetting damages is plainly inadequate"); *see also Frank v. Bloom*, 634 F.2d 1245, 1258 (10th Cir.1980) (recognizing that "when the attorney is representing clients with actual existing conflicts of interest … the attorney's compensation may be withheld even where no damages are shown").

37. *See, e.g.,* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. d (Proposed Fi-

is appropriate without regard to whether the breach of fiduciary duty resulted in damages.

The Attorneys nevertheless argue that forfeiture of an attorney's fee without a showing of actual damages encourages breach-of-fiduciary claims by clients to extort a renegotiation of legal fees after representation has been concluded, allowing them to obtain a windfall. The Attorneys warn that such opportunistic claims could impair the finality desired in litigation settlements by leaving open the possibility that the parties, having resolved their differences, can then assert claims against their counsel to obtain more than they could by settlement of the initial litigation. The Attorneys urge that a bright-line rule making actual damages a prerequisite to fee forfeiture is necessary to prevent misuse of the remedy. We disagree. Fee forfeiture for attorney misconduct is not a windfall to the client. An attorney's compensation is for loyalty as well as services, and his failure to provide either impairs his right to compensation. While a client's motives may be opportunistic and his claims meritless, the better protection is not a prerequisite of actual damages but the trial court's discretion to refuse to afford claimants who are seeking to take unfair advantage of their former attorneys the equitable remedy of forfeiture. Nothing in the caselaw in Texas or elsewhere suggests that opportunistically motivated litigation to forfeit an agent's fee has ever been a serious problem.

The Attorneys also argue that without a determination of a client's actual damages there is nothing to measure whether the fee forfeiture is excessive in a case. The Attorneys point out that one measure of whether punitive damages are excessive is the amount of actual damages awarded. While this is true, forfeiture of an agent's compensation is not mainly compensatory, as we have already noted, nor is it mainly punitive. Forfeiture may, of course, have a punitive effect, but that is not the focus of the remedy. Rather, the central purpose of the remedy is to protect relationships of trust from an agent's disloyalty or other misconduct. Appropriate application of the remedy cannot therefore be measured by a principal's actual damages. An agent's breach of fiduciary duty should be deterred even when the principal is not damaged.

■ We therefore conclude that a client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client.

## B

The Clients argue that an attorney who commits a serious breach of fiduciary duty to a client must automatically forfeit all compensation to the client. This, the Clients contend, is the import of our decision in *Kinzbach* and is necessary to thoroughly discourage attorney misconduct. But *Kinzbach* did not involve issues of whether forfeiture should be limited by circumstances or in amount. The agent there intentionally breached his fiduciary duty in a single, narrow transaction, and his only compensation was a commission. Our holding that his entire compensation was subject to forfeiture cannot fairly be said to require automatic, complete forfeiture of all compensation for any misconduct of an agent.

nal Draft No. 1, 1996) ("But forfeiture is justified for a flagrant violation even though no harm can be proved."); Thomas D. Morgan, *Sanctions and Remedies for Attorney Misconduct*, 19 S. ILL. U.L.J. 343, 351 (1995) ("[T]he fee forfeiture sanction is available even where a client has suffered no loss as a result of an attorney's alleged misconduct."); 1 GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES,

THE LAW OF LAWYERING § 1.5:108 (2d ed. Supp. 1998) ("Generally speaking, where the claim rests on the disloyalty of the lawyer, and the remedy sought is forfeiture or disgorgement of fees already paid, rather than compensatory damages for poor service, the breach of the duty of loyalty *is* the harm, and the client is not required to prove causation or specific injury.").

Nor is automatic and complete forfeiture necessary for the remedy to serve its purpose. On the contrary, to require an agent to forfeit all compensation for every breach of fiduciary duty, or even every serious breach, would deprive the remedy of its equitable nature and would disserve its purpose of protecting relationships of trust. A helpful analogy, the parties agree, is a constructive trust, of which we have observed:

> Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice.... Moreover, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, since the equity of the transaction will shape the measure of relief granted.[38]

Like a constructive trust, the remedy of forfeiture must fit the circumstances presented. It would be inequitable for an agent who had performed extensive services faithfully to be denied all compensation for some slight, inadvertent misconduct that left the principal unharmed, and the threat of so drastic a result would unnecessarily and perhaps detrimentally burden the agent's exercise of judgment in conducting the principal's affairs.

The proposed *Restatement (Third) of The Law Governing Lawyers* rejects a rigid approach to attorney fee forfeiture. Section 49 states:

> A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. In determining whether and to what extent forfeiture is appropriate, relevant considerations include the gravity and timing of the violation, its wilfulness, its effect on the value of the lawyer's work

for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.[39]

The remedy is restricted to "clear and serious" violations of duty. Comment d to section 49 explains: "A violation is clear if a reasonable lawyer, knowing the relevant facts and law reasonably accessible to the lawyer, would have known that the conduct was wrongful."[40] The factors for assessing the seriousness of a violation, and hence "whether and to what extent forfeiture is appropriate", are set out in the rule. Elaborating on the rule, the comments to section 49 make it clear that forfeiture of fees for clear and serious misconduct is not automatic and may be partial or complete, depending on the circumstances presented. Comment a states: "A lawyer is not entitled to be paid for services rendered in violation of the lawyer's duty to a client, or for services needed to alleviate the consequences of the lawyer's misconduct."[41] And comment e observes: "Ordinarily, forfeiture extends to all fees for the matter for which the lawyer was retained...."[42] But comment e adds: "Sometimes forfeiture for the entire matter is inappropriate, for example when a lawyer performed valuable services before the misconduct began, and the misconduct was not so grave as to require forfeiture of the fee for all services."[43] And comment b expands on the necessity for exercising discretion in applying the remedy:

> Forfeiture of fees, however, is not justified in each instance in which a lawyer violates a legal duty, nor is total forfeiture always appropriate. Some violations are inadvertent or do not significantly harm the client. Some can be adequately dealt with by the remedies described in Comment *a* or by a partial forfeiture (see Comment *e* ). Denying

---

**38.** *Meadows v. Bierschwale,* 516 S.W.2d 125, 131 (Tex.1974).

**39.** RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 (Proposed Final Draft No. 1, 1996).

**40.** *Id.* cmt. d.

**41.** *Id.* cmt. a.

**42.** *Id.* cmt. e.

**43.** *Id.*

the lawyer all compensation would sometimes be an excessive sanction, giving a windfall to a client. The remedy of this Section should hence be applied with discretion.[44]

The *Restatement*'s approach, as a whole, is consistent with Texas law concerning constructive trusts, and we agree

with the forfeiture rule stated in section 49 as explained in the comments we have quoted. This rule, or something similar, also appears to have been adopted in most other jurisdictions that have considered the issue.[45]

The rule is not dependent on the nature of the attorney-client relationship, as the

**44.** *Id.* cmt. b.

**45.** *See, e.g., International Materials Corp. v. Sun Corp.,* 824 S.W.2d 890, 895 (Mo.1992) (en banc) (holding that complete forfeiture is not warranted unless there is a clear and serious violation of the lawyer's duty destroying the client-lawyer relationship, thereby removing the justification for the lawyer's compensation, and that recovery could be in quantum meruit for benefits conferred); *Kidney Ass'n of Oregon, Inc. v. Ferguson,* 315 Or. 135, 843 P.2d 442, 447 (1992) (favoring consideration of factors in determining whether attorney's fee should be reduced or denied when attorney breaches duty of loyalty); *In re Marriage of Pagano,* 154 Ill.2d 174, 180 Ill. Dec. 729, 607 N.E.2d 1242, 1249–1250 (1992) ("[W]hen one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court. While the breach may be so egregious as to require the forfeiture of compensation by the fiduciary as a matter of public policy, such will not always be the case.") (citations omitted); *Gilchrist v. Perl,* 387 N.W.2d 412, 417 (Minn.1986) (holding that the amount of fee forfeiture should be determined by consideration of the relevant factors set out in the state's punitive damage statute); *Crawford v. Logan,* 656 S.W.2d 360, 365 (Tenn.1983) (holding that any misconduct of an attorney does not automatically result in fee forfeiture but rather "[e]ach case ... must be viewed in the light of the particular facts and circumstances of the case"); *Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.,* 52 Cal. App.4th 1, 60 Cal.Rptr.2d 207, 216 (1997) (recognizing California courts allowed partial fee recovery by the attorney "for services rendered before the ethical breach ... or ... on an unjust enrichment theory where the client's recovery was a direct result of the attorney's services"); *Fairfax Sav., F.S.B. v. Weinberg & Green,* 112 Md.App. 587, 685 A.2d 1189, 1209 (1996) (holding that law firm was not obligated to disgorge entire fee because firm rendered valuable legal services to clients, and because other remedies of actual and punitive damages and sanctions would be adequate ); *Lindseth v. Burkhart,*

871 S.W.2d 693, 695 (Tenn.Ct.App.1993) (holding that fee forfeiture for a breach of fiduciary duty is not automatic but depends on the facts and circumstances of each case); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller,* 629 So.2d 947, 953 (Fla.Dist. Ct.App.1993) (rejecting a mechanical application of fee forfeiture and approving the multi-factor approach to fee forfeiture as stated in the *Restatement (Third) of The Law Governing Lawyers* ); *Seeman v. Gumbiner (In re Life Ins. Trust Agr. of Julius F. Seeman),* 841 P.2d 403, 405 (Colo.Ct.App.1992) ("[A] conflict of interest is only one of many factors to be considered in determining the award of fees; it does not mandate a denial of all compensation."); *Lurz v. Panek,* 172 Ill.App.3d 915, 123 Ill.Dec. 200, 527 N.E.2d 663, 671 (1988) ("[W]e do not believe defendant should have to forfeit the entire fee.... Rather, we agree with the trial court that the jury was capable of apportioning the contingent fee."); *Mar Oil, S.A. v. Morrissey,* 982 F.2d 830, 840 (2d Cir.1993) (stating that "[u]nder New York law, attorneys may be entitled to recover for their services, even if they have breached their fiduciary obligations"); *Sweeney v. Athens Reg'l Med. Ctr.,* 917 F.2d 1560, 1573–1574 (11th Cir.1990) (holding that under Georgia law, if an attorney has engaged in unethical conduct, "the court may thus have a duty to require forfeiture of some portion of the fees"); *Iannotti v. Manufacturers Hanover Trust Co. (In re New York, New Haven & Hartford R.R. Co.),* 567 F.2d 166, 180–181 (2d Cir.1977) (holding that the court properly tailored the amount of fee forfeiture based on the nature of the breach of fiduciary duty found, as well as evidence that the attorney had, prior to the breach, performed valuable services for the estate); *see also Brandon v. Hedland, Fleischer, Friedman & Cooke (In re Estate of Brandon),* 902 P.2d 1299, 1317 (Alaska 1995) (noting that existing Alaska law appeared to require full fee forfeiture, but directing the trial court on remand to make alternative findings under the multi-factor approach in *Kidney Ass'n* "to reduce chances of a second remand following further appeal"); *Hendry v. Pelland,* 73 F.3d 397, 403 (D.C.Cir.1996) (leaving open the extent of

court of appeals thought,[46] but applies generally in agency relationships. Thus, as we have already seen, section 243 of the *Restatement (Second) of Trusts* sets out a similar rule for forfeiture of a trustee's compensation: "If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation."[47] Comment c to section 243 elaborates:

> It is within the discretion of the court whether the trustee who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied. In the exercise of the court's discretion the following factors are considered: (1) whether the trustee acted in good faith or not; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the whole trust or related only to a part of the trust property; (4) whether or not the breach of trust occasioned any loss and whether if there has been a loss it has been made good by the trustee; (5) whether the trustee's services were of value to the trust.[48]

Section 469 of the *Restatement (Second) of Agency* requires forfeiture of all compensation that cannot be apportioned for prop-

erly performed services if the agent willfully and deliberately breaches his duty to his principal,[49] and as we have noted, comments to section 49 of the proposed *Restatement (Third) of The Law Governing Lawyers* echo this view.[50] But we do not read section 469 to mandate automatic forfeiture or preclude consideration of factors other than an agent's willfulness any more than comments to section 49 do.

Section 49 sets out considerations similar to those for trustees in applying the remedy of fee forfeiture to attorneys. As we have already noted, they are: "the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies."[51] These factors are to be considered in determining whether a violation is clear and serious, whether forfeiture of any fee should be required, and if so, what amount. The list is not exclusive. The several factors embrace broad considerations which must be weighed together and not mechanically applied. For example, the "willfulness" factor requires consideration of the attorney's culpability generally; it does not simply limit forfeiture to situations in which the attorney's breach of duty was intentional. The adequacy-of-other-remedies factor does not preclude

forfeiture to which the plaintiffs might be entitled if they succeed in proving that the attorney breached his duty of loyalty); *Musico v. Champion Credit Corp.*, 764 F.2d 102, 112–113 (2d Cir.1985) (describing trend in New York law away from automatic full fee forfeiture); *Littell v. Morton*, 369 F.Supp. 411, 425 (D.Md.1974) (characterizing strict fee forfeiture as "inequitable" unless a deliberate scheme to defraud the client exists). *But see, e.g., Pessoni v. Rabkin*, 220 A.D.2d 732, 633 N.Y.S.2d 338, 338 (N.Y.App.Div. 1995) (holding that an attorney who violates the disciplinary rules is not entitled to fees for any services rendered); *In re Estate of McCool*, 131 N.H. 340, 553 A.2d 761, 769 (1988) (holding that "an attorney who violates our rules of professional conduct by engaging in clear conflicts of interest, of whose existence he either knew or should have known, may receive neither executor's

nor legal fees for services he renders an estate").

46. 958 S.W.2d at 249 ("Thus, we find a distinction, for purposes of the potential amount of forfeiture, between the typical agency relationship and the attorney-client relationship.").

47. RESTATEMENT (SECOND) OF TRUSTS § 243 (1959).

48. *Id.* cmt. c.

49. RESTATEMENT (SECOND) OF AGENCY § 469 (1958).

50. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. a, b (Proposed Final Draft No. 1, 1996).

51. *Id.* § 49.

forfeiture when a client can be fully compensated by damages. Even though the main purpose of the remedy is not to compensate the client, if other remedies do not afford the client full compensation for his damages, forfeiture may be considered for that purpose.

To the factors listed in section 49 we add another that must be given great weight in applying the remedy of fee forfeiture: the public interest in maintaining the integrity of attorney-client relationships. Like the fifth factor identified by the court of appeals—"the extent to which the attorney's or firm's conduct offends a public sense of justice and propriety" [52]—concern for the integrity of attorney-client relationships is at the heart of the fee forfeiture remedy. The Attorneys' argument that relief for attorney misconduct should be limited to compensating the client for any injury suffered ignores the main purpose of the remedy.

Amici curiae, Professor Charles Silver and Professor Lynn Baker of the University of Texas School of Law, argue that section 49 of the proposed *Restatement (Third) of The Law Governing Lawyers* differs from the rule applicable to other agency relationships and is bad policy. They contend that in general the remedy of forfeiture applies only when the agent is suing for payment of compensation, and for a good reason. A principal dissatisfied with an agent's conduct, they argue, should terminate the agency and withhold compensation; the principal should not be allowed to wait until after the agent has completed his service and then try to take unfair advantage by suing to recover compensation already paid. We disagree that section 49 states a different rule for attorneys. As we have already noted, section 469 of the *Restatement (Second) of Agency* provides:

An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned.[53]

Amici argue that this rule is limited by the caption of section 469, "Disloyalty or Insubordination *as Defense*".[54] But the comments to section 469 do not limit application of the rule to the defense of an agent's claim for compensation. Comment a states in part: "An agent is entitled to no compensation for a service which constitutes a violation of his duties of obedience." [55] Comment e adds that a "principal can maintain an action to recover the amount" of compensation paid to an agent to which the agent is not entitled.[56] Amici argue that the scope of the rule should not be found in the comments, but we think there is more justification for looking to the comments than to two words in the title.

Nor do we agree with amici that forfeiture should, as a matter of policy, be limited to the defense of an agent's claim for compensation. A client may well not know of his attorney's breach of fiduciary duty until after the relationship has terminated. An attorney who has clearly and seriously breached his fiduciary duty to his client should not be insulated from fee forfeiture by his client's ignorance of the matter. Nor should an attorney who has deliberately engaged in professional misconduct be allowed to put his client to the choice of terminating the relationship and risking that the outcome of the litigation may be adversely affected, or continuing the relationship despite the misconduct. The risk that a client will try to take unfair advantage of his former attorney does not justify

---

**52.** 958 S.W.2d at 250.

**53.** Restatement (Second) of Agency § 469 (1958).

**54.** *Id.* (emphasis added).

**55.** *Id.* cmt. a.

**56.** *Id.* cmt. e.

restricting forfeiture to a defensive remedy when the trial court is easily able to prevent inequity in applying the remedy.

Accordingly, we conclude that whether an attorney must forfeit any or all of his fee for a breach of fiduciary duty to his client must be determined by applying the rule as stated in section 49 of the proposed *Restatement (Third) of The Law Governing Lawyers* and the factors we have identified to the individual circumstances of each case.

## C

The parties agree that the determination whether to afford the remedy of forfeiture must be made by the court. The Clients argue, however, that they are entitled to have the amount of the forfeiture set by a jury. The Attorneys argue, and the court of appeals held,[57] that the amount of any forfeiture is also an issue to be decided by the court.

■ Forfeiture of an agent's compensation, we have already explained, is an equitable remedy similar to a constructive trust. As a general rule, a jury "does not determine the expediency, necessity, or propriety of equitable relief." [58] Consistent with the rule, whether a constructive trust should be imposed must be determined by a court based on the equity of the circumstances.[59] However, when contested fact issues must be resolved before equitable relief can be determined, a party is entitled to have that resolution made by a jury.[60]

■ These same principles apply in deciding whether to forfeit all or part of an agent's compensation. Thus, for example,

a dispute concerning an agent's culpability—whether he acted intentionally, with gross negligence, recklessly, or negligently, or was merely inadvertent—may present issues for a jury, as may disputes about the value of the agent's services and the existence and amount of any harm to the principal. But factors like the adequacy of other remedies and the public interest in protecting the integrity of the attorney-client relationship, as well as the weighing of all other relevant considerations, present legal policy issues well beyond the jury's province of judging credibility and resolving factual disputes. The ultimate decision on the amount of any fee forfeiture must be made by the court.

■ The Clients argue that the determination of the amount of fees to be paid an attorney for his services is usually a factual matter for the jury, even in actions for quantum meruit, which are also based in equity,[61] and declaratory judgment actions in which the decision whether to award attorney fees is within the trial court's sound discretion.[62] But in such actions the issue for the jury is the value of the attorney's reasonable and necessary services, not whether a reasonable fee thus determined should nevertheless be withheld for some reason. In declaratory judgment actions, once the jury has found the value of reasonable and necessary legal services, the court must decide whether the award would be equitable and just.[63] In a forfeiture case the value of the legal services rendered does not, as we have explained, dictate either the availability of the remedy or amount of the forfeiture.

---

**57.** 958 S.W.2d at 250–251.

**58.** *State v. Texas Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979).

**59.** *See Meadows,* 516 S.W.2d at 131.

**60.** *See Texas Pet Foods,* 591 S.W.2d at 803 (stating that in an equitable proceeding, "ultimate issues of fact are submitted for jury determination").

**61.** *See Truly v. Austin,* 744 S.W.2d 934, 938 (Tex.1988).

**62.** *See Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998).

**63.** *Id.* at 21.

Both decisions are inherently equitable and must thus be made by the court.

 Thus, when forfeiture of an attorney's fee is claimed, a trial court must determine from the parties whether factual disputes exist that must be decided by a jury before the court can determine whether a clear and serious violation of duty has occurred, whether forfeiture is appropriate, and if so, whether all or only part of the attorney's fee should be forfeited. Such factual disputes may include, without limitation, whether or when the misconduct complained of occurred, the attorney's mental state at the time, and the existence or extent of any harm to the client. If the relevant facts are undisputed, these issues may, of course, be determined by the court as a matter of law. Once any necessary factual disputes have been resolved, the court must determine, based on the factors we have set out, whether the attorney's conduct was a clear and serious breach of duty to his client and whether any of the attorney's compensation should be forfeited, and if so, what amount. Most importantly, in making these determinations the court must consider whether forfeiture is necessary to satisfy the public's interest in protecting the attorney-client relationship. The court's decision whether to forfeit any or all of an attorney's fee is subject to review on appeal as any other legal issue.

### D

Finally, the Attorneys argue that none of the misconduct the Clients have alleged justifies a forfeiture of any fees. Although the Clients make numerous allegations of misconduct against the Attorneys, the parties' arguments have tended to focus on the assertion that the Attorneys reached an aggregate settlement in violation of Rule 1.08(f) of the Texas Disciplinary Rules of Professional Conduct.[64] The At-

torneys and amici curiae argue that this rule is too vague and impractical for any violation to warrant forfeiture of an attorney's fee. The lower courts did not find it necessary to address this argument, and given the difficult considerations involved, we believe it to be imprudent for us to decide the matter in the first instance without a full airing below. Even were we to address it, we could not render judgment for the Attorneys without considering whether the other alleged disciplinary rules violations might also justify forfeiture, an issue barely mentioned in all the parties' briefing. All these issues must be considered by the district court on remand.

### IV

Two minor matters require brief attention.

 First: The Attorneys argue that the district court correctly struck the four plaintiffs added in amended pleadings as parties. The Attorneys objected to the addition of the four plaintiffs on two grounds: that they had not served the Attorneys with citation, and that the addition was untimely. The first ground was not sufficient. Two days after plaintiffs first amended their pleadings, defendants filed a supplemental answer. The filing of an answer dispenses with the necessity of service of citation.[65] As for the second ground, the district court was obliged to allow the pleading amendment absent a showing that the defendants were surprised by it.[66] The defendants did not claim, much less show, surprise. Therefore, the four added plaintiffs should not have been struck.

Second: The court of appeals dismissed plaintiff Austin Gill's appeal as not having been timely filed. Although Gill is listed as a petitioner in this Court, petitioners do

---

**64.** *See* Tex. Disciplinary R. Prof'l Conduct 1.08(f), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (1998) (Tex. State Bar R. art. X, § 9).

**65.** Tex.R. Civ. P. 121.

**66.** Tex.R. Civ. P. 63.

not complain of the court of appeals' dismissal of his appeal. We must therefore affirm that dismissal.

\* \* \* \* \*

For the reasons explained, we modify the court of appeals' judgment to reverse the district court's judgment in its entirety except as to plaintiff Austin Gill, and we remand the case to the district court for further proceedings.