IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0164
════════════
 
Nadine Hamilton, nee Nadine 
Lambert, Petitioner,
 
v.
 
Selma P. Wilson, M.D., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Seventh District of 
Texas
════════════════════════════════════════════════════
 
 
PER CURIAM
 
 
            
The trial court granted a provider’s no-evidence summary judgment motion 
in a health care liability suit, and the court of appeals affirmed. Because 
genuine issues of material fact preclude summary judgment, we reverse the court 
of appeals’ judgment and remand this case to the trial court for further 
proceedings.
            
 On September 16, 2003, eighty-three-year-old Nadine Hamilton was 
admitted to Covenant Lakeside medical center in Lubbock for back surgery. Prior to the 
procedure, anesthesiologist Dr. Selma Wilson was summoned to intubate Hamilton and administer 
general anesthesia. Dr. Wilson attempted the intubation with a 7.5mm 
endotracheal tube, encountered resistance, and then inserted the tube 1-2cm 
farther. When that tube did not reach the depth she expected, she removed it and 
successfully inserted one that was 7.0mm in diameter. After the surgery, a 
recovery room nurse extubated Hamilton and suctioned her throat. Hamilton later complained of chest pain, and x-rays 
indicated that air was entering Hamilton’s chest cavity. It was then discovered 
that Hamilton 
had suffered a tear in her esophagus. That night, Hamilton was transferred to another hospital 
where she successfully underwent emergency corrective surgery by Dr. Donald 
Robertson, a thoracic surgeon. Hamilton filed a 
health care liability claim against Dr. Wilson, alleging that she negligently 
tore Hamilton's 
esophagus during intubation by forcing the endotracheal tube into her esophagus 
after encountering resistance. 
            
Dr. Wilson moved for summary judgment, arguing that there was no evidence 
that she was negligent or that she caused the esophageal tear. Hamilton responded with portions of the depositions of the designated testifying 
experts (Dr. Robert Finnegan on behalf of Hamilton, Dr. Byron Brown for Dr. Wilson), her 
medical records, and Dr. Wilson's own deposition. Dr. Finnegan testified that 
the intubation probably caused the tear in Hamilton's esophagus, and Dr. Wilson and Dr. 
Brown admitted this was possible. The trial court granted the motion, and the 
court of appeals affirmed. __S.W.3d__. Hamilton argues that the court of appeals erred in 
concluding that there was no evidence that Dr. Wilson negligently tore Hamilton’s esophagus. We 
agree. 
            
In a no-evidence summary judgment motion, the movant 
contends that there is no evidence of one or more essential elements of the 
claims for which the non-movant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i). The trial court must grant the motion unless the 
respondent produces summary judgment evidence raising a genuine issue of 
material fact. Id. The respondent is “not required to 
marshal its proof; its response need only point out evidence that raises a fact 
issue on the challenged elements." Tex. 
R. Civ. P. 166a(i) cmt.–1997. We review a 
no-evidence summary judgment for evidence that would enable reasonable and 
fair-minded jurors to differ in their conclusions. City of 
Keller v. Wilson, 
168 S.W.3d 802, 822 (Tex. 2005). 
            
In applying this standard, the court of appeals noted that, to recover 
for medical malpractice, the complainant must prove: 1) the physician had a duty 
to act according to a certain standard, 2) she breached that standard, and 3) 
the breach proximately caused the complainant to sustain injury. __S.W.3d__; 
see IHS Cedars Treatment Ctr. v. Mason, 143 S.W.3d 794, 798 (Tex. 2003). After 
reviewing the acts allegedly performed by Wilson, 
the court of appeals concluded that the mere possibility and “belief” by Dr. 
Finnegan that Wilson inserted an endotracheal tube into 
Lambert's esophagus was “not evidence that proves the questioned fact.” __S.W.3d__.
            
However, Hamilton was not required to prove the facts as 
she alleged them. Rather, she was only required to provide evidence that would 
enable reasonable and fair-minded jurors to differ in their conclusions. After 
examining the evidence on each of the required elements, we conclude that she 
met this burden. 
            
In his expert report, Dr. Finnegan set out the general standard of care 
for an anesthesiologist placing an endotracheal tube. She must: a) establish and 
maintain control of the patient's airway during general anesthesia; b) establish 
this control in a safe manner; c) promptly recognize and document injuries and 
complications related to airway management; and d) promptly seek appropriate 
treatment, if needed, for such injuries and complications. 
            
Hamilton 
contends that certain diagnostic tests (breath tests, CO2 tests, and use of a 
pressure bag) should have been used to determine if the 7.5mm tube was in the 
esophagus and not the trachea before Dr. Wilson attempted to pass the tube after 
encountering a tight fit. Dr. Finnegan noted that the tests take only ten to 
fifteen seconds and suggested that it was proper to use these measures to 
determine if the tube is in the airway and not the esophagus. Dr. Wilson’s 
expert, Dr. Brown, disputed that breath tests should be used in this manner. But 
Dr. Finnegan noted that factors like the “[a]bsence of breath sounds, absence of 
CO2 trace, [and] watching the stomach move instead of the chest wall” were 
measures he had used previously to determine if a tube was in the wrong location 
in previous intubations. Indeed, ultimately Dr. Wilson did use breath sounds to 
verify the placement of the second, smaller 7.0mm tube in Hamilton’s trachea. 
            
The available testimony provides some evidence of a breach of the 
applicable standard of care. Dr. Finnegan testified that Dr. Wilson violated the 
standard of care by improperly calculating the tube’s location. When asked in 
what respect Dr. Wilson breached the standard of care, Dr. Finnegan responded: 
"pushing the 7.5 endotracheal tube down into the 
esophagus." 
            
Dr. Wilson testified that she inserted the tube in farther after 
encountering resistance. And Dr. Finnegan testified that Dr. Wilson failed to 
ascertain whether the tube was positioned properly. Dr. Finnegan also concluded 
that Dr. Wilson's manipulation of the 7.5mm tube caused Hamilton’s esophageal 
tear, and Dr. Wilson and Dr. Brown conceded that was possible. The implication 
is that breath tests, rather than feel alone, should have been performed to 
ensure proper placement in the trachea before Dr. Wilson pushed the 7.5mm tube 
in farther. 
            
We have held that conclusory statements, even from experts, are not 
sufficient to support or defeat summary judgment. Wadewitz v. Montgomery, 
951 S.W.2d 464, 466 (Tex. 1997); see also Burrow v. Arce, 997 S.W.2d 
229, 235 (Tex. 1999)(holding that "it is the basis of 
the witness's opinion, and not the witness's qualifications or his bare opinions 
alone, that can settle an issue as a matter of law; a claim will not stand or 
fall on the mere ipse dixit of a credentialed witness."). Dr. 
Finnegan’s testimony, however, was not based on mere possibilities, speculation, 
or surmise. His opinion that the intubation caused the injury was based on: 1) 
the location of the tear in relation to where the 7.5mm tube would have been 
when it was pushed in by Dr. Wilson; 2) his review of the medical records 
indicating that the tear was "probably related to intubation at the time of 
surgery;" and 3) his impression that the “tight fit" encountered by Dr. Wilson 
was the cricopharyngeal ring of the esophagus. Further, although Dr. Wilson 
proffered her alternative theory for how the tear occurred (during suctioning of 
Hamilton’s throat during extubation), her own testimony that she pushed the 
7.5mm tube in 1-2cm farther even after encountering a “tight fit” could support 
Dr. Finnegan’s conclusion.
            
The basis for Dr. Finnegan’s testimony stands in contrast to the attorney 
in Burrow v. Arce who, when sued for malpractice, offered only a 
perfunctory affidavit swearing innocence to defeat summary judgment. 
Burrow, 997 S.W.2d at 235. Here, Dr. Finnegan’s 
opinion was based on factual evidence relating to Dr. Wilson’s care of Hamilton 
and thus, in conjunction with Dr. Wilson’s testimony and the medical records, 
creates a genuine issue of material fact. As a result, we conclude that 
reasonable and impartial jurors could differ in their conclusions as to what 
caused the tear in Hamilton’s esophagus and that summary judgment was therefore 
improper; Hamilton produced evidence sufficient to raise genuine issues of 
material fact on each of the elements she would be required to prove at trial. 

            
We therefore grant the petition for review and, without hearing argument, 
reverse the court of appeals' judgment and remand this case to the trial court 
for further proceedings consistent with this opinion. Tex. R. App. P. 59.1 and 60.2(d). 
 
Opinion 
delivered: March 28, 2008