11th
Court of Appeals

 Eastland, Texas

            Opinion

 

Al Ellis

Appellant

Vs.      
 No. 11-02-00134-CV  -- 
Appeal from Dallas County

City of Dallas

Appellee

 

The City
of Dallas sued Al Ellis for conversion of money owed to the City for a workers= compensation lien.  The trial court entered judgment on the jury verdict, awarding
the City $40,857.59[1] for
the conversion.  The trial court also
awarded prejudgment and postjudgment interest. 
Both parties appeal.  We affirm.  

               Issues Presented

In his
brief, Ellis presents four issues.  In
the first and second issues, he contends that the jury=s findings are against the overwhelming
weight of the evidence and that the evidence is legally and factually
insufficient to support the findings. 
In the third issue, Ellis argues that the trial court erred by awarding
prejudgment interest for the time period prior to the filing of the petition in
this cause.  Ellis asserts in his fourth
issue that the judgment fails to conform to the law of the case.  

The City
presents two issues.  In the first
issue, the City contends that the trial court erred in refusing to award the
additional sum of $20,428.95 because Ellis forfeited his right to attorney=s fees as a matter of law when he converted
the City=s money. 
Under this issue, the City contends that the trial court erred by
refusing to so instruct the jury and by denying the City=s request for additional post-verdict
findings.  In its second issue, the City
argues that the trial court erred in refusing to award prejudgment interest for
the entire prejudgment period, beginning 180 days after the conversion.  








The jury
was asked to answer only two questions in this case.  Question No. 1 inquired whether the City agreed to accept the sum
of two-thirds of $40,669.33 as a complete settlement of its workers= compensation lien.  The jury answered, ANo.@ 
Then, Question No. 2 asked:  

What sum
of money, if any, if paid now in cash, should be awarded to the City of Dallas
for conversion of monies owed it pursuant to its worker=s compensation lien?  

 

Do not
include interest on any amount of damages you find.  

 

You are instructed that conversion consists of the exercise of dominion
and control over property inconsistent with, and in denial of, the true owner
or the party having the right of possession. 


The jury answered
$40,857.89.  

 Legal and Factual Sufficiency Standards

In order
to address Ellis=s first two issues, we will apply the
following standards of review.  Ellis
had the burden of proof on Question No. 1. 
Consequently, to successfully challenge the legal sufficiency of the
evidence, Ellis must demonstrate on appeal that the evidence conclusively
established all vital facts in support of the issue.  Dow Chemical Company v. Francis, 46 S.W.3d 237, 241 (Tex.2001);
Landon v. S & H Marketing Group, Inc., 82 S.W.3d 666, 674-75 (Tex.App. ‑
Eastland 2002, no pet=n).  We will review the entire record in order to
determine whether Ellis established as a matter of law that the City agreed to
accept $27,112.89 as a complete settlement of its lien.  See Dow Chemical Company v. Francis, supra;
Landon v. S & H Marketing Group, Inc., supra. 








The City
had the burden of proof on Question No. 2. 
Consequently, to address Ellis=s legal sufficiency/no-evidence challenge, we must consider only the evidence
and inferences that tend to support the finding, disregarding any evidence or
inferences to the contrary.  Southwest
Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex.2002); Garza v. Alviar,
395 S.W.2d 821, 823 (Tex.1965); see Merrell Dow Pharmaceuticals, Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex.1997), cert. den=d, 523 U.S. 1119 (1998).  We may
sustain a no-evidence challenge only when: 
(1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the only evidence offered
to prove a vital fact is no more than a mere scintilla; or (4) the evidence
conclusively establishes the opposite of the vital fact.  Merrell Dow Pharmaceuticals, Inc. v. Havner,
supra at 711 (citing Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 TEXAS L. REV. 361,
362-63 (1960)).  If there is any
evidence of probative force to support the finding, we must overrule the no‑evidence
point.  Juliette Fowler Homes, Inc. v.
Welch Associates, Inc., 793 S.W.2d 660, 666 (Tex.1990); In re King's Estate,
244 S.W.2d 660 (Tex.1951).  

In
reviewing the factual sufficiency challenges to the jury=s findings, we must consider all of the
evidence and determine whether the evidence in support of the findings is so
weak as to be clearly wrong and unjust or whether the findings are so against
the great weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust.  Dow Chemical Company
v. Francis, supra at 242; Pool v. Ford Motor Company, 715 S.W.2d 629
(Tex.1986);  Cain v. Bain, 709 S.W.2d
175, 176 (Tex.1986); Garza v. Alviar, supra; Landon v. S & H Marketing
Group, Inc., supra at 675; Casino Magic Corp. v. King, 43 S.W.3d 14, 19
(Tex.App. - Dallas 2001, pet=n den=d).  

          Evidence








The record
shows that the City was a self-insured subscriber to the Texas workers= compensation laws when Gregory Ford was
injured in an automobile accident while in the course and scope of his
employment as a firefighter for the City of Dallas.  Ellis, an attorney, successfully represented Ford in his workers= compensation claim against the City and in
his lawsuit against the third-party tortfeasors.  Ford and the third-party tortfeasors reached a settlement in
which Ford was to receive over $400,000.00. 
The initial check, in the amount of $150,000.00, was made payable to
Ford and Ellis.  The settlement
agreement provided for Ellis to resolve the City=s subrogation interest for workers= compensation benefits paid to Ford. 
Ellis testified that he had been informed by the workers= compensation administrator that the City=s lien was at least $58,000.00.  Ellis was familiar with the workers= compensation laws in effect at that time[2]
and knew that the City had the right to recover, to the extent of the workers= compensation payments it had made to or on
behalf of Ford, the Afirst
money@ from Ford=s settlement with the third parties. 
The City, however, did not receive its money.  

Ellis and
the City disagreed about the amount of money owed to the City.  Although Ellis and the City ultimately
concurred that the City=s legitimate workers= compensation lien was $61,286.84, 
Ellis testified that he and the City=s claims manager, James Alderson, had reached an agreement to settle
for less money.  Ellis testified that
Alderson had agreed to accept two-thirds of the amount of workers= compensation payments documented to Ellis
and to pay Ellis the other one-third for his attorney=s fees. 
Ellis testified that the City had only documented $40,669.33.  

Alderson
testified that he agreed to pay Ellis attorney=s fees of one-third of the amount of the City=s lien, but Alderson denied having made any
agreement to settle for less than two-thirds of $61,286.84.  Alderson testified that he never settled the
City=s workers= compensation liens for less than 100 percent (minus up to one-third
for attorney=s fees) because the funding for the City=s workers= compensation payments came from tax dollars.  Alderson was responsible for recovering as much of that money as
possible in order to keep the tax base for the residents of Dallas at the
lowest level possible.  








The
documentary evidence that was introduced included correspondence between Ellis
and Alderson.  On October 2, 1989, Ellis
wrote to confirm that Alderson agreed to provide him with a complete list of bills
paid by the City for Ford=s injuries.  Ellis noted that a
tentative settlement had been reached in the underlying lawsuit.  In a letter dated October 9, 1989, Alderson
stated that the total amount paid by the City was $70,809.29.  According to his letter, Alderson attached a
copy of Aall checks issued for both indemnity and
medical payments.@  Alderson also requested that Ellis advise
him if any further documentation was needed. 
In a letter dated October 16, 1989, Ellis wrote that the attachments to Alderson=s letter only verified payments of
$40,669.33.  Ellis concluded this letter
by stating, AIf you have any other documents to verify the
City=s worker=s compensation subrogation interest, I would be happy to consider them.@ 
However, on October 19, Ford entered into the settlement agreement with
the third parties.  On that same date,
Ellis issued a check to the City for $27,112.89 (two-thirds of $40,669.33) as
full payment of its workers= compensation lien.  On October
27, Alderson returned the check and restated the City=s position that it was entitled to $70,809.29
less one-third for attorney=s fees.  In a letter dated
November 2, 1989, Ellis acknowledged that the City had sent documentation with
its October 27 letter verifying that the City=s legitimate subrogation interest was $61,286.84.  Ellis also stated his opinion that they had
reached an oral agreement based upon the previously verified amount of
$40,669.33, but he proposed that they Asplit the difference@ between the two figures.  On
November 10, 1989, Alderson responded with a letter concurring that the City=s subrogation interest was $61,286.84.  Alderson also stated that the City had
agreed to pay attorney=s fees
of one-third of that amount.  Ellis
responded on November 14, again proposing that they Asplit the difference@ because Ellis and Ford had been Aoperating under the assumption that the City=s subrogation interest was no more than
$58,000.@  On
November 17, Alderson wrote to Ellis and again stated the City=s position that it was entitled to $61,286.84
less one-third for attorney=s fees.  Alderson requested that
Ellis remit a check for that amount to the City.  In the final correspondence between Ellis and Alderson, dated
December 1, 1989, Ellis rejected Alderson=s Aoffer of settlement@ and invited Alderson to Atake whatever steps you feel are necessary to
protect the alleged subrogation interest of the City of Dallas.@  








We hold
that the evidence is both legally and factually sufficient to support the jury=s findings. 
As to Question No. 1, Ellis did not conclusively show that the City
agreed to accept a lesser sum than was legitimately owed to it pursuant to
statute, nor was the jury=s answer against the great weight and preponderance of the
evidence.  Furthermore, sufficient
evidence was introduced to support Question No. 2.  Ellis was aware of the City=s statutory right to subrogation and of its right to receive the Afirst money@ from Ford=s
settlement.  See Fort Worth Lloyds v.
Haygood, 246 S.W.2d 865, 869 (Tex.1952); Prewitt and Sampson v. City of Dallas,
713 S.W.2d 720, 722 (Tex.App. - Dallas 1986, writ ref=d n.r.e.). 
Shortly after Ford=s settlement with the third parties, Ellis acknowledged that the amount
of the workers= compensation lien was $61,286.84, but he
refused to give the City the amount owed pursuant to that lien.  Ellis had the money in his possession.  He took out one-third of the $61,286.84 as
his share for attorney=s fees
and kept the remaining two-thirds ($40,857.89) in his trust account.  Several months later he disbursed the money
when Ford requested that he do so. 
Ellis disbursed two-thirds of the City=s money to Ford and kept another one-third for himself.  So, Ellis actually received one-third of the
$61,286.84 plus another one-third of the City=s $40,857.89, for a total of $34,048.24.  The evidence was legally and factually sufficient to show that
Ellis converted the $40,857.89 which belonged to the City pursuant to its
workers= compensation lien.  See Prewitt and Sampson v. City of Dallas, supra.  Ellis=s first and second issues are overruled.  

 Law of the Case

In his
fourth issue, Ellis contends that the judgment failed to conform to the law of
the case as set out in City of Dallas v. King, No. 05-96-01457-CV, 1998 WL
337863 (Tex.App. - Dallas June 26, 1998, pet=n den=d)(not designated for publication).  We disagree.  The City originally sued Ford, Ellis, the third-party
tortfeasors, and the tortfeasors= insurance company for conversion. 
The appeal to the Dallas Court of Appeals, however, involved only the
third-party tortfeasors and their insurance company.  In that appeal, the court held that the tortfeasors and their
insurance company did not convert the City=s money because the City=s lien attached at the time of disbursement of the settlement check to
Ford and Ellis, not while the money was still in the possession of the
tortfeasors or their insurance company. 
The Dallas Court of Appeals noted, AAny claim for conversion at that point in time would involve property
controlled by Ford=s
attorney [Ellis], not by appellees.@ City of Dallas v. King, supra. 
We hold that the law of the case did not mandate a different result in
the judgment below.  Ellis=s fourth issue is overruled.  

 Forfeiture of Attorney=s Fees








In its
first issue, the City contends that the trial court erred in refusing to award
the City an additional $20,428.95 (the amount of attorney=s fees recovered by Ellis on the City=s workers= compensation lien) because, as a matter of law, Ellis forfeited his
right to attorney=s fees
by converting the City=s
money.  Under this issue, the City
complains of the trial court=s refusal of a requested jury instruction and of its denial of a
request for additional findings.  The
City relies upon Prewitt and Sampson v. City of Dallas, supra.  In Prewitt and Sampson, the court
upheld a summary judgment in favor of the City and concluded as a matter of law
that attorney Prewitt converted the City=s money.  Prewitt recovered a
judgment for her client from a third-party tortfeasor; failed to notify the
City, who (like in the present case) was a self-insured subscriber with a
statutory workers=
compensation subrogation interest, of the settlement; and refused to tender
payment to the City.  In that case,
Prewitt also urged on appeal that she had established a right to one-third of
the recovery for attorney=s fees under former Article 8307, section 6a.  The court held, A[A]s a matter of law, Prewitt forfeited her right to attorney=s fees.@  Prewitt and Sampson v. City of
Dallas, supra at 723.  We find Prewitt
and Sampson to be distinguishable. 
First, the City in the present case agreed to pay Ellis one-third of its
subrogation interest as attorney=s fees.  Second, there was
evidence that the City failed to initially document all of its payments.  Third, there was evidence that Ellis sent
the City a check for an amount that he thought had been agreed to as the amount
owed to the City.  

We find
the reasoning of the supreme court in Burrow v. Arce, 997 S.W.2d 229
(Tex.1999), to be applicable in this case. 
In Burrow, the court extensively reviewed the forfeiture of
attorney=s fees by an attorney who breached a
fiduciary duty owed to his client.  The
supreme court noted that the forfeiture Arule is not dependent on the nature of the attorney-client
relationship...but applies generally in agency relationships.@  The
court concluded that, although contested fact issues may be resolved by a jury,
the ultimate decision regarding the equitable remedy of forfeiture of attorney=s fees is discretionary but Amust be made by the court.@ 
Burrow v. Arce, supra at 245. 
The supreme court set out several factors to be considered by the trial
court, including the gravity and timing of the attorney=s violation, the wilfulness of the violation,
the effect of the violation on the value of the attorney=s work, any harm to the client, the adequacy
of other remedies, and the public interest in maintaining the integrity of
attorney-client relationships.  Burrow
v. Arce, supra at 243-44.  

Because
the forfeiture of attorney=s fees is a question for the court, the trial court properly refused
the City=s requested jury instruction, which would
have instructed the jury that forfeiture was mandatory.  Furthermore, pursuant to Burrow, the
trial court had discretion in determining whether Ellis should forfeit any or
all of his attorney=s
fees.  The trial court chose not to
require any forfeiture.  Although Ellis
converted the City=s
money and was susceptible to forfeiting some or all of his attorney=s fees, we cannot say that, under the
circumstances presented in this case, the trial court clearly abused its
discretion in failing to so find.  The
City=s first issue is overruled.  

     Prejudgment Interest








In Ellis=s third issue and in the City=s second issue, the parties complain of the
amount awarded by the trial court for prejudgment interest.  The City asserts that the trial court erred
by tolling the prejudgment interest for the three-year period during which the
parties had agreed to dismiss without prejudice the City=s cause of action against Ellis so that the
City could pursue its appeal in City of Dallas v. King, supra.  Ellis asserts that the trial court abused
its discretion in awarding prejudgment interest during the period prior to the
City=s refiling of the petition in this case.  It appears that the trial court awarded
prejudgment interest for the period from May 16, 1990 (180 days from the date
of the City=s last demand for payment of its lien) to the
date of the agreement between the parties that related to the appeal in City of
Dallas v. King, supra, and for the period from the City=s refiling in this case until the date of
judgment.  

Prejudgment
interest was properly awarded in this case pursuant to the principles announced
in Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d
507, 528-33 (Tex.1998).  Prejudgment
interest begins to accrue on the earlier of (1) 180 days after a defendant receives
written notice of a claim or (2) the date suit is filed.  Johnson & Higgins of Texas, Inc. v.
Kenneco Energy, Inc., supra at 531. 
Furthermore, an agreement between the parties to temporarily suspend all
aspects of a lawsuit may operate to toll the accrual of prejudgment
interest.  The agreement in this case
was entered into by the City and Ellis so that the City could immediately
appeal the summary judgment, which the trial court had refused to sever, in
favor of the third party tortfeasors and their insurance company.  The parties agreed that the City would
dismiss its claims against Ellis without prejudice to refiling, that the
partial summary judgment against Ellis would be reentered upon refiling, and
that Ellis would waive the defenses of laches and limitations.  With respect to this issue, the court in
Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., supra at 531,
stated, AIn most circumstances, this [standstill
agreement] would operate to toll the accrual of prejudgment interest while the
agreement is in effect.  However, parties
to a standstill agreement may contractually provide otherwise.@ 
Unlike the standstill agreement in Johnson & Higgins, the
agreement in the present case did not Aprovide otherwise.@  Consequently, the trial court
did not err in its award of prejudgment interest.  Ellis=s
third issue and the City=s second issue are overruled.  

 This Court=s Ruling

The
judgment of the trial court is affirmed. 


 

TERRY McCALL

JUSTICE

February 6, 2003

Panel consists of:  Arnot, C.J., and 

Wright, J., and McCall, J. 











     [1]We note that the jury actually awarded $40,857.89.  





     [2]See former TEX.REV.CIV.STAT. art. 8307, ' 6a (Act of May 17, 1985, 69th Leg., R.S., ch. 326, ' 1, 1985 Tex. Gen. Laws 1387, repealed by Act of
Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, 1989 Tex. Gen. Laws 114), now TEX.
LABOR CODE ANN. ' 417.001-.003 (Vernon 1996 & Supp. 2003).  Former Article 8307, section 6a applies to
this case because it was in effect at the time of Ford=s injury.  See
Second Injury Fund of the State of Texas v. Avon, 985 S.W.2d 93, 95 (Tex.App. -
Eastland 1998, pet=n den=d); Harris v.
Varo, Inc., 814 S.W.2d 520, 523 (Tex.App. ‑ Dallas 1991, no writ).  Former Article 8307, section 6a as it read
in 1987 when Ford was injured is quoted in relevant part by Autry v. Dearman,
933 S.W.2d 182, 187 (Tex.App. - Houston [14th Dist.] 1996, no writ).