Affirmed and Majority Opinion and
Concurring and Dissenting Opinion filed December 14, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00267-CV



Jose L.
Elizondo and Guillermina Elizondo,
Appellants/Cross-Appellees 

v.

Ronald Krist,
The Krist Law Firm, P.C., Kevin D. Krist and William T. Wells, Appellees/Cross-Appellants 



On Appeal from
the 129th District Court

Harris County, Texas

Trial Court
Cause No. 2007-50121



 

MAJORITY  OPINION

            Appellants
and cross-appellees Jose L. Elizondo and his wife, Guillermina Elizondo, appeal
the trial court’s orders granting summary judgment in favor of appellees and
cross-appellants Ronald D. Krist, The Krist Law Firm, P.C., Kevin D. Krist, and
William T. Wells (collectively, “the Lawyers”).  In six issues, the Elizondos
contend the trial court erred in granting the Lawyers’ motions for summary
judgment and abused its discretion in striking portions of the affidavit of the
Elizondos’ lawyer expert.  In a cross-issue, the Lawyers argue the trial court
erred in denying their motions for summary judgment on the nonexistence of an
attorney-client relationship with Mrs. Elizondo.  We affirm.

I

            Jose
Elizondo was working at the BP Amoco Chemical Company plant in Texas City when
an explosion occurred in March 2005.  The blast threw him about twenty feet. 
Jose received medical attention for neck and back injuries, and returned to
work several days later.  He continued to be affected by emotional problems,
however, as several of his close co-workers were killed.  

            Shortly
after the explosion, Jose met with attorney William Wells.  Wells had been
recommended by Jose’s supervisor at BP.  During the meeting with Wells, Jose
signed a power of attorney, retaining Wells to represent him in all claims
against BP arising out of the explosion.  Guillermina Elizondo was not at the
meeting and did not sign the power of attorney.  

            Wells
subsequently sent a demand letter to BP asking for a settlement of $2 million
for the Elizondos’ claims.  BP responded by offering $50,000.  Wells then decided
to enlist Ronald Krist, Kevin Krist, and the Krist Law Firm as additional
counsel in the hope that they could negotiate a larger settlement.  Wells
referred several cases arising out of the explosion, including Jose’s, to the
Krist Law Firm.  Ronald and Kevin Krist arranged to meet with counsel for BP to
discuss the cases and try to settle them.  After the meeting, however, BP’s
settlement offer to Jose was still $50,000.

            Wells
and Kevin Krist met with Jose to discuss BP’s settlement offer and his options. 
Ultimately, Jose decided to accept BP’s offer, and signed a release and
settlement agreement.  Although the release was drafted to include Guillermina
and included a separate, printed space for her signature, she never signed the
release because one of the attorneys at the settlement meeting told Jose that
it was not necessary.  After he signed the agreement, Jose never contacted any
of the Lawyers again. 

            In
August 2007, Jose learned that an attorney named “Krist” who had handled claims
for some of the explosion victims was now working for BP.  He consulted an
attorney and, that same month, filed an action against the Lawyers.  In an
amended petition, Jose and Guillermina asserted claims for professional
negligence, breach of fiduciary duty, violations of the Texas Deceptive Trade
Practices Act (“DTPA”), common-law fraud, fraudulent misrepresentations,
negligent representations, and fraudulent inducement.  They also sought
recovery of actual and exemplary damages.  Jose and Guillermina alleged, among other
things, that the Lawyers failed to obtain a larger settlement for Jose and
never discussed pursuing or settling a loss-of-consortium claim—which was now
time-barred—on Guillermina’s behalf.  They also alleged that Jose was “sold
down the river” so that Ronald Krist could represent BP in connection with the
underlying claims of the Elizondos and others.

            The
Lawyers filed various motions for summary judgment asserting, among other
things, no evidence of damages, impermissible fracturing or “claim splitting”
of a legal malpractice claim into claims for breach of fiduciary duty, fraud,
negligent misrepresentation and DTPA violations, no attorney-client
relationship with Guillermina, and termination of the attorney-client
relationship with Jose upon his execution of a release.  The Lawyers also
argued that fee-forfeiture damages could not be recovered as a matter of law. 
The trial court granted some of the Lawyers’ summary judgment motions and
denied others.  Based on all of the summary-judgment rulings, the trial court
rendered a final, take-nothing judgment against the Elizondos on all of their
claims.  This appeal followed.

II

            In
their first and second issues, the Elizondos contend the trial court erred by
dismissing Jose’s and Guillermina’s claims on the ground that they presented no
evidence of damages.  In their sixth issue, they contend the trial court abused
its discretion in striking portions of the affidavit of their expert, attorney
Arturo Gonzalez.  Because the Elizondos offered attorney Gonzalez’s affidavit
as some evidence of their alleged damages, we will begin with the trial court’s
ruling on the Lawyers’ objections to Gonzalez’s affidavit.

A

            In
their no-evidence motions for summary judgment, the Lawyers argued that all of
the Elizondos’ claims should be dismissed because they have no evidence of
damages.  Specifically, the Lawyers argued that the Elizondos had no evidence
that BP was willing to pay anything more than what Jose Elizondo agreed to
accept and the Elizondos could not identify anyone who obtained a larger
settlement.  In response, the Elizondos offered their own deposition testimony
and Gonzalez’s affidavit. 

            In
his affidavit, Gonzalez averred that, based on his experience working on the BP
docket at two plaintiffs’ law firms, he had personal knowledge of the values of
cases these firms settled on behalf of their clients, and he had personally
participated in the settlement and mediation process for many cases. 
Gonzalez’s nine-page affidavit described in detail his background as a licensed
attorney, his experience in BP litigation, the confidentiality of the
settlements with BP, the criteria considered in the settlement process, and the
specifics of the Elizondo case, including his opinions on the Lawyers’
liability and damages.  

            The
trial court struck the following portions of Gonzalez’s affidavit:

·       
General Value of Elizondo Case

            Based on the factual information provided and
reviewed by me, my experience in the BP litigation, my knowledge of general
settlement values and in the criteria and protocol relied upon to establish
general settlement values in the BP litigation, it is my opinion that for a
plaintiffs’ attorney acting within the standard of care applicable to the same
or similar circumstances, using reasonable due diligence, the Elizondo case
would have had a general value, by way of settlement or verdict, in the range
of between Two Million ($2,000,000.00) and Three Million ($3,000,000.00)
dollars.  Guillermina Elizondo’s individual claim would represent some part of
that value, but Jose’s claim would represent the majority of that value.  The
settlement value of the Elizondo claim is not distinguished as compensatory,
non-economic or exemplary in nature, but instead is a single value offered by
BP so that BP could avoid a trial or jury verdict.

·       
In
my opinion, . . . the Lawyers would have garnered far in excess of the $50,000
offer which was supposedly the most that BP would ever pay.

·       
[T]hese
cases were heavily evaluated and settlements obtained were significantly higher
as compared to the average personal injury lawsuit in the state of Texas.

            The
Elizondos contend that the trial court abused its discretion in striking these
portions of Gonzalez’s affidavit, and that the exclusion of this testimony
probably caused the rendition of an improper judgment.  They argue that if
Gonzalez’s testimony had been allowed, it would have established that their
claims would have had a value of between $2 and $3 million.  But the Elizondos
do not challenge any specific evidentiary grounds for the trial court’s ruling.
 Instead, they merely assert that Gonzalez’s qualifications were
unchallenged and he has “personal knowledge and extensive experience in
settling a portion of the 4000 claims arising out of the BP explosion, all of
which BP settled before a jury could return a verdict.”[1]   

            The
decision whether to admit or exclude evidence is committed to the sound
discretion of the trial court.  City of Brownville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995).  A trial court abuses its discretion when it acts
arbitrarily or unreasonably, or without reference to any guiding principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985).  A trial
court’s evidentiary ruling must be upheld if there is a legitimate basis for it. 
Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). 
Even if the exclusion of evidence is found to be an abuse of discretion, it
does not warrant reversal unless the error probably caused the rendition of an
improper judgment.  Id.            

            The
Lawyers assert that Gonzalez’s testimony is conclusory, self-serving, based on
hearsay, devoid of analysis, speculative, and otherwise incompetent.  They also
complain that Gonzalez sought to testify about the settlement value of the
Elizondos’ underlying claims based on facts he is precluded from disclosing or
discussing due to the confidential nature of the information concerning other
BP settlements.  

            In
his affidavit, Gonzalez states that the settlement process and settlement
amounts are confidential and therefore he is “precluded pursuant to the
confidentiality provisions from divulging specific settlement amounts related
to the monetary payments by BP to specific plaintiffs.”[2]  And
although Gonzalez lists specific criteria he contends BP “focused on” when
determining settlement values, he offers no analysis to explain how these
factors would be applied to the Elizondos’ situation.  He also fails to link
settlement amounts to specific injuries and circumstances, and provides no
comparison of settlement amounts of similar claims.  Thus, Gonzalez’s affidavit
offers only conclusory and speculative opinions.  

            Conclusory
statements by an expert witness are insufficient to raise a question of fact to
defeat summary judgment.  McIntyre v. Ramirez, 109 S.W.3d 741, 749 (Tex.
2003).  An expert must provide a reasoned basis for his opinion.  Burrow v.
Arce, 997 S.W.2d 229, 235 (Tex. 1999).  Burrow involved a
legal-malpractice action that arose out of the representation of plaintiffs in
a class action lawsuit that ended in settlement.  The expert for the defendant
lawyers averred that he had reviewed all the relevant facts and concluded that
the plaintiffs’ settlements were fair and reasonable.  Id. at 235–36. 
The Supreme Court of Texas held the expert’s affidavit was insufficient because
he did not state the basis for his opinion.  Id.  The court described
the expert’s testimony as “Take my word for it, I know: the settlements were
fair and reasonable.”  Id. at 236.   We conclude that Gonzalez’s
affidavit is similarly insufficient.

            Accordingly,
the trial court did not abuse its discretion in excluding those portions of
Gonzalez’s affidavit.  We therefore overrule the Elizondos’ sixth issue.  

B

            In
their first and second issues, the Elizondos contend that, even if portions of
Gonzalez’s affidavit were properly stricken, they presented competent evidence
of their damages through their deposition testimony and the non-stricken
portions of Gonzalez’s affidavit.

1

            To
prevail on a no-evidence summary-judgment motion, a movant must allege that
there is no evidence of an essential element of the adverse party’s claim. 
Tex. R. Civ. P. 166a(i); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002).  The trial court must grant the motion unless the respondent
produces summary-judgment evidence raising a genuine issue of material fact. 
Tex. R. Civ. P. 166a(i).  However, the respondent is “not required to marshal
its proof; its response need only point out evidence that raises a fact issue
on the challenged elements.”  Hamilton v. Wilson, 249 S.W3d 425, 426
(Tex. 2008).

            When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the non-movant, indulging every reasonable inference
and resolving any doubts against the motion.  City of Keller v. Wilson,
168 SW.3d 802, 824 (Tex. 2005).  We sustain a no-evidence summary judgment if
(1) there is a complete absence of proof of a vital fact, (2) rules of law or
evidence bar the court from giving weight to the only evidence offered to prove
a vital fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence conclusively establishes the opposite of a vital
fact.  See id. at 810.  Less than a scintilla of evidence exists when
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, and in legal effect is no
evidence.  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). 
More than a scintilla of evidence exists when the evidence rises to a level
that would enable reasonable and fair-minded people to differ in their
conclusions as to the existence of the vital fact.  Id.

2

            Here,
Jose contends that he should have received a larger settlement than he got, and
Guillermina contends that she obtained no settlement because her consortium
claim was not pursued.  But the trial court struck those parts of the
Elizondos’ attorney-expert’s affidavit concerning the value of their cases “by
way of settlement or verdict,” and the record contains no other objective
evidence of the value of either Jose’s or Guillermina’s case.  

            Concerning
Jose, summary judgment was proper on all of his claims because there is no
evidence that he would have received more from BP than the $50,000 he received
in settlement.  In his deposition, Jose could not identify anyone who obtained
a larger settlement for similar claims, the amount of any other settlement
received, or whether the settlements were for injuries like those he suffered. 
Jose also admitted he had no idea what the value of his claim is.  On appeal,
Jose focuses on the harm that he suffered from the explosion, but this evidence
is no evidence of damage from the Lawyers’ alleged negligence in prosecuting
his claim.  Guillermina likewise testified that she did not know the value of
Jose’s claims, and she did not know of anyone who received a larger settlement
for the same type of claim.  Jose’s and Guillermina’s testimony presented no
legally sufficient evidence of the value of Jose’s claim.

            Guillermina’s
testimony concerning her loss-of-consortium claim is likewise no evidence of
damage from the Lawyers’ alleged wrongdoing.  Loss of spousal consortium is an
independent cause of action derivative of the injured person’s claim.  See Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 328 (Tex. 1993) (defining spousal consortium as the mutual right of the
husband and wife to that affection, solace, comfort, companionship, society,
assistance, and sexual relations necessary to a successful marriage).  On
appeal, Guillermina points to her testimony concerning the changes in her
relationship with Jose after the explosion, but, like Jose’s testimony
concerning his injuries from the explosion, this testimony is not evidence of
the recovery she would have received if her claim had been prosecuted without
malpractice.  Guillermina admitted she did not know what the value of her own
claim is, and she did not know of any spouse who recovered any greater amount
from BP.  Jose also admitted he had no idea what the value of his wife’s claim
is.   The Elizondos have presented no evidence of the value of Guillermina’s
claim.  

            Further,
the non-stricken portions of attorney Gonzalez’s affidavit do not otherwise
provide evidence of the Elizondos’ damages.  The Elizondos point to Gonzalez’s
statements that a diligent attorney would have prosecuted Jose’s claims further
if the pre-litigation settlement offer was not in the range of $2 to $3
million, and that Jose’s case “had value substantially in excess of BP’s ‘best
offer.’”  Gonzales also stated that the settlement received was “inadequate,
“very inadequate,” not “fair and reasonable,” and “basically for nuisance
value.”  The trial court struck (1) a paragraph assigning a general dollar
value of $2 to $3 million to his case, (2) a sentence stating that Jose could
have gotten more than $50,000, and (3) a statement that settlements in BP cases
were higher than most personal-injury lawsuits in Texas.  Because the
foundation for Gonzalez’s non-stricken statements about adequacy of the
settlement was excluded, the remaining statements the Elizondos rely on are
conclusory, speculative, and unsupported by any underlying facts.  See 1001
McKinney Ltd. V. Credit Suisse First Boston Mortgage Capital, 192 S.W.3d
20, 27 (Tex. App.—Houston [14th Dist.] 2005, pet. denied.) (conclusory
statements are those that do not provide underlying facts to support
conclusion).  Unsupported, conclusory opinions of a witness do not constitute
evidence of probative force and will not support a jury finding.  See, e.g.,
City of San Antonio v. Pollock, 284 S.W.3d 809, 816 (Tex. 2009); Gen.
Motors Corp. v. Iracheta, 161 S.W.3d 462, 471 (Tex. 2005).  Such opinions
are simply not evidence.  See Iracheta, 161 S.W.3d at 471.  Without his
stricken testimony as a factual basis, therefore, Gonzalez’s other statements do
not raise a genuine fact issue as to damages.

            Because
the Elizondos have not presented more than a scintilla of competent evidence of
their damages arising from the Lawyers’ allegedly wrongful conduct, the trial
court did not err in granting summary judgment on this ground.  We therefore
overrule the Elizondos’ first and second issues.  Because we have determined
that the trial court did not err in granting summary judgment on the Elizondos’
claim based on no evidence of damages, we need not reach the Elizondos’ third
issue, that the trial court erred in granting summary judgment regarding the
termination of Jose’s representation, or their fourth issue, that the trial
court erred in granting summary judgment on their claims other than
malpractice.

C

            In
their fifth issue, the Elizondos contend that the trial court erred in granting
summary judgment on fee forfeiture as another form of relief—other than
damages—for their claims.  See Burrow, 997 S.W.2d at 240 (holding that a
client need not prove actual damages in order to obtain forfeiture of an
attorney’s fee for the attorney’s breach of fiduciary duty to the client). 
Specifically, they argue that the trial court erred in granting summary
judgment on the grounds that fee forfeiture should not be applied to disgorge
fees that BP paid to Ronald Krist and The Krist Law Firm for work performed for
BP in conflict with the lawyers’ ongoing representation of Jose and
Guillermina.  

            It
is undisputed that the Elizondos paid no fees to the Lawyers and so the Lawyers
have no fees from them to disgorge.  Instead, the Elizondos argue, the Lawyers
should be required to disgorge fees they were paid by BP, a third party.  In
support of this contention, the Elizondos cite the eminent jurist Judge Learned
Hand, who wrote that if an attorney represents opposing interests:

The usual consequence has been that he is debarred from
receiving any fee from either, no matter how successful his labors.  Nor will
the court hear him urge, or let him prove, that in fact the conflict of his
loyalties has had no influence upon his conduct; the prohibition is absolute
and the consequence is a forfeiture of all pay.

Silbiger
v. Prudence Bonds Corp., 180 F.2d 917, 920–21 (2d Cir.
1950) (citations omitted).  Initially, we observe that a requirement that a
lawyer who represents conflicting interests must disgorge “all pay” does not
necessarily lead to the conclusion that one client may be awarded the fees paid
by the other client.  Another interpretation of the quoted language is that the
attorney must disgorge to each client the fees that each client paid to the
lawyer.  Further, we note that an automatic forfeiture of “all pay,” without
regard to the value of any services rendered to the client, conflicts with Burrow
v. Arce, in which our supreme court instructs that fee forfeiture is
available only for “clear and serious” violations of a lawyer’s duty, and even
then total fee forfeiture may not always be appropriate.  See Burrow,
997 S.W.2d at 241–42.  

            Further,
courts that have considered this specific issue have concluded that plaintiffs
should not be allowed to recover fees paid by a third party.  See Swank v.
Cunningham, 258 S.W.3d 647, 673–74 (Tex. App.—Eastland 2008, pet. denied)
(holding parties were not entitled to fees paid to law firm by third parties,
even in related matters); Liberty Mut. Ins. Co. v. Gardere & Wynne.
L.L.P., 82 Fed. Appx. 116, 121 (5th Cir. 2003) (holding that forfeiture of
other client’s fees paid to attorneys, even in related matters, is an improper
extension of Burrow v. Arce).

            We
conclude that the Elizondos are not entitled to the remedy of forfeiture of
fees BP paid to the lawyers, and therefore the trial court did not err in
granting summary judgment in favor of Ronald Krist and the Krist Law Firm.  We
overrule the Elizondos’ fifth issue.  

*
* *

            We
overrule the Elizondos’ first, second, fifth, and six issues, and do not reach
the third and fourth issues.  Accordingly, we affirm the trial court’s
judgment.

 








                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Frost, Brown,
and Christopher (Brown, J., majority, Christopher, J., concurring and dissenting).

 

 









[1]
By not challenging the evidentiary basis for the trial court’s rulings or the
Lawyers’ objections, the Elizondos have arguably waived any error in those
rulings.  Regardless of this deficiency, we will address the merits of the
trial court’s rulings.





[2]
The Elizondos sought to obtain discovery regarding various documents relating
to the BP settlements and, in response, the Lawyers asserted various
objections.  The Elizondos also asked for a court order under which Gonzalez
could reveal specific information regarding the BP settlements, and the Lawyers
opposed this motion.  But, the Elizondos have not asserted on appeal that the
trial court sustained the Lawyers’ discovery objections or denied this motion,
and the Elizondos have not cited any place in the record in which the trial
court made any ruling in this regard.  In addition, the Elizondos have not
assigned error or presented argument challenging any such ruling by the trial
court.